**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF SOUTH CAROLINA**

**AIKEN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | **CR. NO. 1:21-cr-00789** |
| | ) | |
| | ) | |
| **-vs-** | ) | **SENTENCING MEMORANDUM AND** |
| | ) | **MOTION FOR A VARIANCE** |
| | ) | |
| **KELSEY LEIGH CURLES** | ) | |

PLEASE TAKE NOTICE that Kelsey Leigh Curles, by and through undersigned counsel, submits this sentencing memorandum and motion for a variance pursuant to *United States v. Booker*, 543 U.S. 220 (2005), and 18 U.S.C. § 3553(a). For the reasons set forth in this memorandum, Ms. Curles respectfully requests that the Court impose a sentence of imprisonment of 14 months' time served, followed by a term of supervised release. This sentence is "sufficient but not greater than necessary, to comply with the purposes set forth in paragraph (2) of" 18 U.S.C. § 3553(a)." While the sentencing guidelines suggest a higher sentence, 14 months' time served is appropriate in light of the offense conduct, Ms. Curles's history and characteristics, and the sentences imposed for similar offenses in this judicial district.

Ms. Curles's request for such a drastic reduction from the guidelines set by the Presentence Report (PSR) are not without merit. Curles repeats her assertion in the objections in the PSR that the cross reference to the Solicitation to Commit Murder (p. 14 of the PSR) should not apply in her case. This in addition to her background and a positive psychological assessment give her confidence in requesting this variance.

-1-

**Statutory Considerations – 18 U.S.C. § 3553**

Pursuant to 18 U.S.C. § 3553(a), the purposes a court must consider in discerning an appropriate sentence include the following:

The need for the sentence imposed—

    (A)    to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B)    to afford adequate deterrence to criminal conduct;

    (C)    to protect the public from further crimes of the defendant; and

    (D)    to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

In tailoring a sentence to comply with these purposes and in addition to consideration of those purposes, § 3553(a) states that a court:

[S]hall consider—

    (1)    the nature and circumstances of the offense and the history and characteristics of the defendant;

    (2)    (set forth above)

    (3)    the kinds of sentences available;

    (4)    the kinds of sentence and sentencing range established [under the guidelines];

    (5)    any pertinent policy statement [issued by the Sentencing Commission];

    (6)    the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

      (7)    the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).  These considerations, including the purposes of paragraph (2), are addressed below.

## DISCUSSION

**(1)    the nature and circumstances of the offense and the history and characteristics of the defendant;**

<u>The nature and circumstances of the offense</u>:

The offense is a violation of the Cyberstalking statute where Curles accessed the "dark web" exploring options to injure her former romantic partner (hereinafter "Victim 1") and his wife (hereinafter "Victim 2"). At the onset of her relationship with Victim 1, Curles was a naïve 19-year-old High School graduate recently medically discharged from the United States Navy. Curles sought companionship through the website Ashley Madison that unbeknownst to her is a matchmaking site for cheaters. Victim 1 was a married Lexington, SC mechanic more than 15 years her senior. Curles met with Victim 1 about six times from May 2021 to early July 2021. Curles relates that Victim 1 was domineering and abusive during this time. The relationship ended when Victim 1 stopped returning Kelsey's attempts at contact. From late August 2021 until late October 2021, Curles accessed the "dark web" and made inquiries into soliciting physical injury. These ranged from beating Victim 1 to killing Victim 1 and Victim 2. At one point, at the direction of someone on the "dark web," Curles purchased $100 in Bitcoin which sat unused in an account in Kelsey Curles's actual name and was never transferred to any potential "hitmen."

On November 5, 2021, an undercover FBI Agent called Curles. There are five recorded phone calls with this agent. The undercover FBI agent initiated the calls and led the conversations. Although Kelsey does engage with the agent, at the conclusion of the calls, she attempts to disengage and distance herself from her initial inquiries into "the hit." Listening to the calls, there is clearly a lot of reluctance on the part of Curles ("What if I decide to change my mind and leave it in the past?"; "I'm pretty fucking freaked out."; "I'm going to think about it."; and finally, "I've made up my mind. I'm probably not going to do it. It's not me."). The agent pushes Kelsey Curles to download WhatsApp to continue the conversation and often presses her on the subject ("What's the hesitancy?"). The tone of the conversation is of a pushy salesperson (the undercover FBI agent) and a customer who is regretful that they even entered the store (Kelsey Curles). Curles was approached by the FBI at her home shortly after and turned herself in on November 18, 2021. Kelsey has been in pretrial detention ever since.

<u>The history and characteristics of the defendant</u>:

Kelsey Curles is a 22-year-old 2019 graduate of South Aiken High School. After graduation, Curles enlisted and was briefly in the United States Navy before being medically discharged. She moved back to Aiken County where she lived between her grandmothers. At the time of her arrest, Kelsey had a few part-time jobs. For a more detailed background, Kelsey directs the Court to the psychological report of forensic psychiatrist Dr. Amanda Salas submitted under seal in July 2022. In the event of her release, Curles will return to Aiken County where she will be cared for by her family and will participate in therapy to address the issues outlined in the aforementioned report.

**(2)      the need for the sentence imposed–**

   **(A)      to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;**

Ms. Curles acknowledges the seriousness of her offense and is deeply remorseful, embarrassed, and saddened by her conduct. While the Court must impose a sentence that "afford[s] adequate deterrence to criminal conduct," it is not necessary to imprison Kelsey beyond the 14 months that she has served in pretrial detention.

   **(B)      to afford adequate deterrence to criminal conduct;**

A 14-month sentence of incarceration will adequately deter criminal conduct. Prior to turning herself in on November 18, 2021, Kelsey had never been in trouble with the law. Curles is a first time offender with a low risk of recidivism. This time in detention has served as an explicit reminder of the consequences of risky behavior.

   **(C)      to protect the public from further crimes of the defendant,**

The sentence recommended by this memo will protect the public from further crimes of the defendant for the period while she was incarcerated and, just as importantly, upon release, permit Kelsey to continue treatment, further reducing the risk of recidivism, which is already low. Kelsey, unlike many defendants, has the benefit of stable, longstanding familial relationships to ease her transition back into society. When released, she will be in under close supervision by federal probation, and she will be better suited to participate in the therapy recommended by Dr. Salas than she would in the Bureau of Prisons. A 14-month sentence followed by probation is adequate to protect the public from further crimes of the defendant.

  **(D)** **to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.**

Ms. Curles is not in need of any training or medical care that cannot be adequately addressed during supervised release.

  **(3)** **the kinds of sentences available;**

Kelsey acknowledges that her potential sentencing range is within Zone D of the Sentencing Table and she will be subject to a term of imprisonment. The 14 months spent at the Barnwell Detention Center satisfy this. Permanent and significant consequences resulting from conviction on this felony offense are adequate. We respectfully request a variance to set her term of imprisonment well below the guidelines.

  **(4)** **the kinds of sentences and the sentencing range established [under the guidelines];**

Ms. Curles acknowledges that her guideline range is above the 14-month sentence she is requesting. The requested sentence is appropriate, however, in light of the weak empirical support for sentences calculated pursuant to the statute, the problems with the particular enhancements applied in this case, and the sentences imposed for similar conduct in this judicial district.

  **(5)** **the Guideline Calculation in the PSR Includes an Enhancement for the Cross Reference to the Solicitation to Commit Murder and Should be Ignored; and**

In Paragraph 45, Cross Reference, the PSR adds 19 points to Kelsey Curles's Base Level of 18, creating an adjusted Offense Level of 37. When Kelsey Curles was initially placed under investigation in November 2021, it was for the charges of Cyberstalking, Murder For Hire, and

Solicitation To Commit A Crime of Violence. The United States Attorney's Office decided to only pursue the charge of Cyberstalking. The Department of Justice's Principles Of Federal Prosecution (aka The United States Attorney Manual) states in §9-27.300 "Once the decision to prosecute has been made, the attorney for the government should charge and pursue the most serious, readily provable offenses." In Kelsey Curles's case, that charge is Cyberstalking. The PSR is substituting its own judgement for that of the United States Attorney. The more aggravated charges of Murder For Hire and Solicitation To Commit A Crime of Violence are simply not as readily provable. Criminal intent for the charges not pursued would be more difficult to prove beyond a reasonable doubt.

The offense conduct admitted by Kelsey Curles indicates low true ambition and significant means to carry out any further crime. Significantly, she strongly renounces her intent to further any criminal action. Were Kelsey to face the charges of Murder For Hire and/or Solicitation To Commit A Crime of Violence, the facts of this case make her eligible for an affirmative defense of Renunciation (18 U.S.C. § 373(b)). Even in the light most favorable to the government, the evidence is so one-sided (see *infra* nature and circumstances of the offense) that a rational jury could only find Kelsey not guilty. After her statement to the undercover agent that "I've made up my mind. I'm probably not going to do it. It's not me," there is no further evidence that she made alternate plans to carry out her intent.

Please note that Kelsey Curles's objections to the offense conduct and to this cross reference do not negate her acceptance of responsibility on the charge of Cyberstalking.

## CONCLUSION

Kelsey Curles respectfully requests that, for the reasons set forth in this memorandum, the Court grant a variance and impose a sentence of imprisonment of 14 months (time served) followed by 5 years of supervised probation with restricted access to the internet and other limitations. This would be sufficient but not greater than necessary to achieve purposes of sentencing. Such a sentence would allow Ms. Curles to pursue employment and finish college – giving her the opportunity to support herself and her family. Further, such a sentence could allow her to participate in the psychotherapy recommended by Dr. Salas in her report. Rehabilitation is at the core of all sentencing, especially with first time offenders. The sentence recommended in this memorandum would be essential to Ms. Curles's wellbeing and greatly reduce her risk to reoffend.

Respectfully submitted,

s/Alexandre Thomas Postic_____
Alexandre Thomas Postic
Postic Law Firm, PA
Post Office Box 11926
Columbia, South Carolina 29211
alex@posticlawfirm.com
(803) 771-8081 Facsimile: (803) 771-4888

ATTORNEY FOR THE DEFENDANT
FEDERAL ID #: 6713

January 17, 2023